

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 13, 2015**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | CASE NO. 10-33561-SGJ-13 |
| **RUDOLFO A. RAMOS & DIANE** | § | (CHAPTER 13) |
| **D. RAMOS,** | § | |
| Debtors. | § | |

## MEMORANDUM OPINION AND ORDER DENYING CHAPTER 13 DEBTORS' END-OF-CASE REQUEST TO MOFIDY PLAN TO SURRENDER HOME [DE # 77], AND SUSTAINING TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF DISCHARGE ORDER [DE # 74]

### I.    INTRODUCTION.

This Memorandum Opinion and Order involves joint Chapter 13 Debtors who are in a predicament at the end of their Chapter 13 case.  The Debtors own a home at 3461 Bevann Dr., Dallas, Texas 75234 (the "Homestead").  Home mortgage company Ocwen Loan Servicing, LLC

("Ocwen") [1] services a secured note and deed of trust ("Home Loan") on the Homestead. The Debtors obtained confirmation of a plan early in their case that contemplated retaining their Homestead; specifically, they would cure certain prepetition default arrearages owed on their Home Loan, over the 60-month life of their plan, and would resume regular postpetition mortgage payments directly to Ocwen during the plan (*i.e.,* a so-called "cure and maintain" plan), pursuant to section 1322(b)(5) of the Bankruptcy Code. The Debtors faithfully made all of their plan payments ***to the Chapter 13 Trustee***, for the 60-month life of their plan (and, thus, "cured" the prepetition arrearage owed on their Home Loan), but failed to make ***numerous***, direct postpetition mortgage payments to Ocwen during that 60 months (thus, falling more behind on their Home Loan). This failure to make the postpetition mortgage payments was only "discovered" at the end of the 60-month term of their plan (*i.e.*, discovered by Debtors' counsel, the Chapter 13 Trustee, and the court), because Ocwen never moved for relief from the automatic stay or otherwise filed a pleading to complain, and the Debtors were silent about failing to make all their postpetition mortgage payments. When it was time to determine whether the Debtors should receive their discharge, Ocwen finally "spoke up" about this problem. As will further be explained below, the Debtors now propose an end-of-case plan modification to simply ***surrender*** their Homestead to Ocwen, on account of its secured claim.

There are multiple issues now before the court.

---

[1] The original claimant on the Debtors' Homestead was Wells Fargo Bank, National Association, as Trustees under Pooling and Servicing Agreement dated as of November 1, 2004, Asset-Backed Pass-Through Certificates, Series 2004-WHQ2, but on December 27, 2010, an Assignment/Transfer of Claim was filed transferring the claim to Ocwen.

***Issue #1: Preliminarily, In the Context Of a "Cure and Maintain" Plan, Is a Chapter 13 Debtor Entitled To a Discharge If He or She Faithfully Makes All Plan Payments To the Chapter 13 Trustee For the Term of His or Her Plan, But Does Not Make Direct Postpetition Mortgage Payments To the Mortgage Lender That Are Contemplated Under the Plan?***

This court has previously cited approvingly (orally, in court) certain bankruptcy court decisions—*In re Kessler* and *In re Heinzle*[2]—that hold that a debtor is ***not*** entitled to a discharge if she faithfully makes all plan payments to the Chapter 13 Trustee but fails to make direct, ongoing mortgage payments that are contemplated by the confirmed plan, as part of the debtor's intention to cure and maintain her mortgage, pursuant to section 1322(b)(5) of the Bankruptcy Code. To be clear, the holdings in *In re Kessler* and *In re Heinzle*, in essence, provide that, for purposes of entitlement to a discharge, there has not been "***completion of the debtor of all payments under the plan,***" pursuant to section 1328(a) of the Bankruptcy Code, if—in connection with a "cure and maintain" plan—a debtor has not made her direct postpetition mortgage payments to the mortgage lender during her case. In other words, direct ongoing payments to a mortgage lender postpetition constitute "payments under the plan." Thus, this court now answers in writing that the answer to Issue #1 is "no."

***Issue #2: In Order To Receive a Discharge In a Situation Such As This, Is It Nevertheless Possible For a Debtor To Modify Her Plan (In Spite Of the Fact That 60 Months Have Elapsed) To Surrender His Or Her Residence To the Mortgage Lender, As Full Payment On Its Secured Claim, Since Section 1329(a) Of the Bankruptcy Code Permits Modification Of a Plan At "Any Time After Confirmation Of the Plan But Before Completion Of Payments Under Such Plan"?***

The Debtors in this case realized the possible "good news/bad news" aspects of the *In re Kessler* and *In re Heinzle* decisions. On the one hand, this decisional authority holds that a debtor who has not made direct postpetition payments to her mortgage lender under a "cure and

---

[2] *In re Kessler*, No. 09-60247, 2015 WL 4726794, at *3 (Bankr. N.D. Tex. Jun. 9, 2015); *In re Heinzle*, 511 B.R. 69, 78 (Bankr. W.D. Tex. 2014).

maintain" plan has not **completed all payments under the plan** and is not entitled to a discharge—notwithstanding the fact that she made all conduit plan payments to the Chapter 13 Trustee. That is the bad news for these Debtors. But the literal wording of section 1329(a) of the Bankruptcy Code could arguably be the good news. Section 1329(a) of the Bankruptcy Code permits modification of a Chapter 13 plan "at any time after confirmation of the plan, **but before completion of payments under such plan**" (emphasis added). While, at first blush, it might seem undeniably too late to modify a plan here, since the 60-month term of the plan has now elapsed (*see* section 1329(c) of the Bankruptcy Code–a "plan modified under this section may not provide for payments over a period that expires after the applicable commitment period . . . unless the court, for cause, approves a longer period, **but the court may not approve a period that expires after five years after such time**"), the Debtors argue that a modification may still be an option, under the reasoning of *In re Heinzle* and *In re Kessler*, since there has not been "completion of payments" under their plan. Moreover, since the Debtors are moving to modify their plan to simply **surrender** their Homestead to Ocwen, the modification would not involve "**payments**" being made over a period of time that expires "after five years after" the time that the first payment under the original confirmed plan was due, and would not run afoul of section 1329(c) of the Bankruptcy Code. The court believes the Debtors are technically, partially correct—that there might be a way to "fix" an end-of-case problem such as the one in the case at bar—so long as the "fix" does not involve modifying a plan to extend plan **payments**, **per se**, over a period of **more than five years**. But for the reasons set forth below, the Debtors' proposed plan modification to surrender does not work.

While, certainly, any debtor has the option of surrendering collateral to a secured lender on account of its secured claim at the time of confirming his or her **original** plan, pursuant to

section 1325(a)(5)(c) of the Bankruptcy Code, there is, in general, a significant split of authority on whether a debtor may *modify* a chapter 13 plan, post-confirmation and before completion of payments under the plan, to surrender collateral to a secured creditor. Section 1329(a)(1)-(4) of the Bankruptcy Code is the governing authority on this point. It collectively sets forth the different ways that a confirmed plan might be modified. These specific provisions do not mention *surrender* as a possibility. Rather, these provisions reference increasing or reducing the *amount of payments*, extending or reducing the *time for such payments*, or altering the amount of distribution to a creditor whose claim is provided for by the plan to take account of any payment of such claim *other than under the plan*.[3] As further set forth below, there is one line of cases that holds that the literal wording of section 1329(a) of the Bankruptcy Code does not permit modification to surrender—the word "surrender" is simply not used in the statute. There is yet another line of cases that holds that a modification-to-surrender is permitted *via* some combination of: (a) section 1329(a)(1) of the Bankruptcy Code, since the debtor, through surrender, is essentially *reducing the amount of payments* to the secured creditor down to "$0"; (b) section 1329(a)(3), because a debtor's surrender of collateral to a creditor is a form of payment made to that creditor *other than under the plan*; or (c) section 502(j) of the Bankruptcy Code, since the modification, essentially, involves the court reconsidering the secured claim and reclassifying and reducing it (to be clear, section 502(j) of the Bankruptcy Code provides a mechanism for a court to reconsider a claim at any time "for cause"—thus, the court could reconsider and disallow the secured claim or, perhaps, allow it as a lesser, unsecured deficiency claim).

---

[3] There is also a lesser-used provision of section 1329(a) that permits reduction of plan payments where necessary and reasonable to adjust for health insurance for the debtor and her dependents, in certain circumstances. *See* 11 U.S.C. § 1129(a)(4).

Notably, most of the authority that deals with the permissibility of modification-to-surrender arises in the context of a ***vehicle***.  Does that matter?  Perhaps not, if section 1329(a) of the Bankruptcy Code (perhaps coupled with section 502(j) of the Bankruptcy Code) is the only authority that applies to this issue.  However, if equities matter, the issue becomes more complex—because a vehicle depreciates during a plan while the debtor is using it, and residential real property is less likely to depreciate during a case and may even appreciate to the lender's benefit.  Further, on the topic of equities, what about the fact that, in the case at bar, Ocwen ***never complained about the Debtors' failure to make postpetition mortgage payments through filing a motion to lift stay or other pleading during the case?***

The Debtors' proposal to modify-by-surrender certainly has some equitable appeal.  After all, the Debtors are acknowledging that they did not fulfill their obligations, by failing to make their postpetition mortgage payments, and are essentially offering to "pay" for this infraction by giving up their home now.  Then, hopefully, they might get the fresh start that they hoped for in this case and that they otherwise "earned" by making the "regular" (*i.e.,* conduit) plan payments to the Chapter 13 Trustee.

Nevertheless, this court decides to join the line of cases that hold that a debtor ***generally*** may not modify a plan—post-confirmation but before completion of payments under such plan—pursuant to section 1329(a) of the Bankruptcy Code, in order to ***surrender*** collateral to a secured lender.  Under the facts here, the sub-provisions of section 1329(a) of the Bankruptcy Code simply offer no mechanism for the Debtors to modify their plan.  Thus, this court now answers in writing that the answer to Issue #2 is "no."   But, as explained in connection with Issue #3 below, the situation might be different if: (a) Ocwen had taken affirmative action in the Debtors' bankruptcy case by moving for stay relief and foreclosing; ***and*** (b) the Debtors were not

at the end of the 60-month plan term and there existed a way to address Ocwen's anticipated

unsecured deficiency claim.

> ***Issue #3: Would It Matter If Ocwen Had Taken Affirmative Action and Moved To Lift the Stay and Foreclosed, and There Remained Time To Address Its Unsecured Deficiency Claim In the Chapter 13 Plan?***

The court emphasizes that the holding in this case is very fact-specific.  A few

distinguishing facts might make a significant difference.  Specifically, the court acknowledges

that many cases come before it in which a debtor is faced with a motion to lift stay at some point

***midway through his or her chapter 13 case*** when the debtor has failed to make postpetition

direct mortgage payments.  The stay is often lifted.  The mortgage lender forecloses.  The

mortgage lender may or may not file an unsecured deficiency proof of claim.  In such a situation,

a debtor sometimes files a plan modification to address the new set of circumstances.  Often, the

plan modification is described loosely as a "modification-to-surrender"—although that seems to

be a bit of a misnomer, since it was technically the creditor's election to pursue remedies outside

the plan, rather than an effort by the debtor to force a change.  Thus, it is really a modification to,

essentially, deal with the consequences of the creditor's election to pursue recovery "other than

under the plan" and, accordingly, reduce the secured claim of the mortgage lender to a $0 claim,

or perhaps reclassify the claim to a reduced unsecured deficiency claim.  In such a situation, it

seems that section 1329(a)**(3)** of the Bankruptcy Code—which is sometimes mentioned in the

modification-to-surrender cases—may be applicable.  As earlier mentioned, section 1329(a)(3)

of the Bankruptcy Code provides that a plan may be modified post-confirmation to "alter the

amount of the distribution to a creditor whose claim is provided for by the plan ***to the extent***

***necessary*** to take account of any payment of such claim ***other than under the plan***" (emphasis

added).  To reiterate, when there has been a foreclosure during the case, it seems that a claim

provided for by the plan has received consideration (or a payment) "*other than under the plan*." Thus, a plan modification, pursuant to section 1329(a)(3) of the Bankruptcy Code, might be *necessary* in that set of circumstances. To be clear, this court contrasts: (a) the situation of a creditor pursuing recovery "other than under the plan" (through motion to lift stay and foreclosure) and then the debtor reacting by necessity (by proposing a plan modification); with (b) the situation of a debtor forcing a change on the creditor midway through his plan. The former scenario seems to fit within section 1329(a)(3); the latter does not. Admittedly, most of the reported cases do not focus on this distinction.[4]

However, it is noteworthy that sections 1322(b)(2) and (5) of the Bankruptcy Code must additionally be consulted, whenever there is a proposed plan modification that pertains to a loan secured by the debtor's primary residence (as opposed to a vehicle). Sections 1322(b)(2) and (5) of the Bankruptcy Code prohibit modifying *the rights* of a home mortgage lender in any plan. Thus, with any plan modification pertaining to a debtor's primary residence, assuming the underlying mortgage loan is not a Texas home equity loan or other loan that is nonrecourse against a debtor (here, that is not the case), the mortgage lender must not be prevented, in any plan modification, from asserting an unsecured deficiency claim against the debtor after stay relief and foreclosure, or else *its rights have been modified* in violation of sections 1322(b)(2) and (5) of the Bankruptcy Code. Thus, where there has been stay relief granted during a case in favor of a lender and a foreclosure, and then a plan modification to account for this distribution to the lender that was "other than under the plan," there would need to be the ability in the case for the mortgage lender to file an unsecured deficiency claim (presumably, an amended proof of claim or a section 502(j) motion), so that it might receive whatever distribution it is entitled to as

---

[4] *But see In re White*, 169 B.R. 526, 530-531 (Bankr. W.D.N.Y. 1994).

an unsecured creditor.  Thus, with these requirements in mind, this court now answers in writing that the answer to Issue #3 is "yes."  If Ocwen had taken affirmative action at some point during the case and ultimately foreclosed, the Debtors would have some options in this Chapter 13 case.  Unfortunately, in a context such as the case at bar, there is no mechanism to provide for payment on a possible unsecured deficiency of Ocwen—since the Debtors are at the end of their 60-month plan (meaning a plan modification would inappropriately modify the mortgage lender's right to assert a deficiency).  Notably, the general unsecured creditors in this case did receive a small dividend under the Debtors' confirmed plan, so Ocwen would have been entitled to some recovery on any unsecured deficiency claim it might have asserted.  Additionally, the Debtors stated in their Proposed Plan Modification that Ocwen was undersecured.

In summary, the court must ultimately deny the Debtors' Proposed Plan Modification, keeping in mind that slightly different facts may have led to a different result.[5]  This will be without prejudice to the Debtors' right to convert and pursue a discharge in chapter 7 (if eligible)—rather than face dismissal without a discharge.

## II.    JURISDICTION

Bankruptcy subject matter jurisdiction exists in this matter, pursuant to 28 U.S.C. § 1334(b).  This bankruptcy court has authority to exercise bankruptcy subject matter jurisdiction pursuant to 28 U.S.C. § 157(a) and (c) and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984.  This is a core proceeding in which this court has statutory authority to issue final orders, pursuant to at least 28 U.S.C. §157(b)(2)(A), (J), (L), and (O).

---

[5] The court realizes the somewhat awkward and unfortunate result here.  One might think, why should the Debtors be "penalized" for Ocwen's inactivity?  On the other hand, it was the Debtors who stopped paying their ongoing mortgage payments midway through the Bankruptcy Case and remained silent.

### III.     FINDINGS OF FACT

1.     On May 21, 2010, Rudolfo A. and Diane D. Ramos (the "Debtors") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code, Case No. 10-33561 (the "Bankruptcy Case").

2.     On August 10, 2010, Wells Fargo Bank, National Association, as Trustees under Pooling and Servicing Agreement dated as of November 1, 2004 Asset-Backed Pass-Through Certificates, Series 2004-WHQ2 ("Wells Fargo") filed claim no. 11-1 in the Bankruptcy Case asserting a secured claim relating to the Debtors' Homestead in the total amount of $186,118.41, including a $23,648.05 prepetition arrearage claim (the "Proof of Claim").

3.     The Debtors' chapter 13 plan was confirmed on August 24, 2010 (the "Confirmed Plan").[6]

4.     On December 27, 2010, Wells Fargo transferred the Proof of Claim to Ocwen.[7]

5.     On June 16, 2015, the Chapter 13 Trustee filed a Notice of Final Cure Payment which indicated that the Debtors had paid their prepetition arrearage claim in full and that the Debtors had made their monthly ongoing mortgage payments directly.[8]

6.     On July 1, 2015, Ocwen filed a Statement in Response to Trustee's Notice of Final Cure Payment, indicating that it agreed that the Debtors had paid the full amount to cure the prepetition arrearage, but that the Debtors had failed to make several of their ongoing postpetition mortgage payments from September 1, 2012 through July 1, 2015 resulting in $48,335.06 remaining due to Ocwen under the Confirmed Plan.[9]  The court notes (with utter

---

[6] *See* DE # 26.

[7] *See* DE # 28.

[8] *See* DE # 71.

[9] *See* DE # 73.

amazement) that, despite the fact the Debtors failed to make approximately three years of their required ongoing postpetition mortgage payments, Ocwen never filed a motion for relief from stay during the Bankruptcy Case.

7.        On July 10, 2015, the Debtors filed their Certification and Motion for Entry of Discharge Pursuant to U.S.C. Section 1328(a) (the "Motion for Discharge"), certifying that all of their plan payments had been made and that a discharge should be entered.[10]

8.        On July 30, 2015, the Chapter 13 Trustee filed the Trustee's Objection to the Motion for Discharge, which stated that the Debtors had not completed all payments under the Confirmed Plan (since they had not made all of their postpetition mortgage payments to Ocwen) and were not entitled to a discharge.[11]

9.        On August 6, 2015, the Debtors filed their Proposed Plan Modification, which sought to surrender the Homestead to Ocwen in full satisfaction of Ocwen's Proof of Claim.  The Proposed Plan Modification valued the Homestead at $175,000 (meaning Ocwen was undersecured).[12]  The Home Loan is not a Texas home equity loan and is not otherwise nonrecourse against the Debtors.

10.        On September 3, 2015, the Chapter 13 Trustee filed his Objection to the Proposed Plan Modification, which alleged that it was too late to propose a modification because the final plan payment had already been made by the Chapter 13 Trustee and, thus, was untimely pursuant to section 1329(a) of the Bankruptcy Code.[13]

---

[10] *See* DE ## 74 & 75.

[11] *See* DE # 76.

[12] *See* DE # 77.

[13] *See* DE # 78.

11.     On September 8, 2015, the Chapter 13 Trustee filed his Final Report and Account, indicating that the Debtors paid $46,775 into the Plan.  Of this amount, $23,648.05 went towards Ocwen's prepetition mortgage arrearage claim and $2,118.26 went to unsecured creditors (there were $56,805.15 in general unsecured claims allowed).[14]

12.     On September 10, 2015, this court held a hearing on the Motion for Discharge and Proposed Plan Modification.  At the hearing, the Debtors admitted that they had not made several of their postpetition mortgage payments and specifically testified that, instead of making these payments to Ocwen, they had helped pay for their daughter's college expenses.[15]

### IV.     CONCLUSIONS OF LAW

**A.   *In the Context Of a "Cure and Maintain" Plan, a Chapter 13 Debtor is Not Entitled To a Discharge If He or She Faithfully Makes All Plan Payments To the Chapter 13 Trustee For the Term of His Or Her Plan, But Does Not Make Direct Postpetition Mortgage Payments To the Mortgage Lender That Are Contemplated Under the Plan.***

The contested matter now before the court began with the Chapter 13 Trustee arguing that the court should not grant the Debtors a discharge because section 1328(a) of the Bankruptcy Code only contemplates a discharge "after completion by the debtor of ***all payments under the plan***" (emphasis added).  As earlier discussed, it came to light at the end of this Bankruptcy Case that, although the Debtors faithfully made all plan payments ***to the Chapter 13 Trustee*** ($46,775 worth) for the entire 60-month life of their plan (and, thus, "cured" the $23,648.05 prepetition arrearage owed on their Home Loan), they failed to make nearly three years' worth of direct postpetition mortgage payments to Ocwen during that 60 months (Ocwen represents that $48,335.06 is now past due to it).  The Chapter 13 Trustee asserts that both the

---

[14] *See* DE # 79.

[15] *See* FTR Recording, September 10, 2015 at 3:26:10-3:26:30 & 3:30:17-3:30:40.

conduit payments to the Chapter 13 Trustee, as well as the direct postpetition payments that were supposed to be made to Ocwen, should be interpreted as "payments under the plan" for purposes of section 1328(a) of the Bankruptcy Code and entitlement to discharge. This court agrees.

Two courts in Texas, including one in this District, have recently held that "completion of payments under the plan," for purposes of section 1328(a) of the Bankruptcy Code, encompasses **both**: (a) payments to the Chapter 13 Trustee; as well as (b) any payments that are contemplated to be paid by the debtor **directly** to secured creditors under the terms of a confirmed chapter 13 plan.[16] The facts in *Kessler* were very similar to the case at bar. In *Kessler*, the joint debtors obtained confirmation of a chapter 13 plan that provided for 60 payments of $300 per month, to be made to the trustee, and for direct monthly payments to certain secured creditors. The plan stated that the debtors were $8,595.70 in arrears on their mortgage debt, with an outstanding balance of $99,154. The plan provided for the curing of the pre-petition mortgage arrearage as part of the regular plan payments to the trustee and for the maintenance of their mortgage payments during the plan with direct payments to the mortgage lender, Bank of America. The Kesslers completed the payments to the trustee as required by the plan (thus, curing the prepetition arrearage owed to Bank of America), but failed to make the direct mortgage payments and, as a result, their postpetition arrearage was $40,922.89. Notwithstanding their failure to stay current on their postpetition mortgage payments, the Kesslers moved for discharge.[17] In determining whether the Kesslers were entitled to a discharge, the court had to determine whether direct postpetition payments to a mortgage lender were "payments under the

---

[16] *In re Kessler*, No. 09-60247, 2015 WL 4726794, at *3 (Bankr. N.D. Tex. Jun. 9, 2015) (Judge Robert Jones); *In re Heinzle*, 511 B.R. 69, 78 (Bankr. W.D. Tex. 2014) (Judge Craig Gargotta).

[17] *Kessler*, 2015 WL 4726794 at *2.

plan."[18]  Citing to the Fifth Circuit's decision in *Foster v. Heitkamp*,[19] the court held that postpetition payments of a mortgage debt, whether paid direct or conduitly through the trustee, are treated as paid "under the plan" when the plan also provides for the curing of prepetition arrears on the debt (*i.e.,* when it is a "cure and maintain" plan).  Thus, any payment made in accordance with the provisions of a chapter 13 plan is a payment under the plan; and a debt is provided for "under the plan" so long as a provision treats it.[20]  Because the Kesslers' chapter 13 plan provided for curing and maintaining the mortgage debt, the direct mortgage payments made by the Kesslers to Bank of America were payments "under the plan" and, as a result, the Kesslers were not entitled to a discharge.

The court notes that the *In re Heinzle* case, mentioned above, involves very similar facts and reaches the very same result as *In re Kessler*.[21]

---

[18] *Id.*

[19] *Foster v. Heitkamp (In re Foster)*, 670 F.2d 478, 489 (5th Cir. 1982) (the issue was whether the bankruptcy court had erred in not confirming joint debtors' chapter 13 plan that contemplated curing and maintaining their home mortgage, pursuant to section 1322(b)(5) of the Bankruptcy Code, when the plan stated that the prepetition arrearage would be paid "under the plan" and the ongoing postpetition mortgage payments would be "outside the plan"; these were the actual words used by the debtors and there was a discussion of the significance of these terms; on appeal, it became apparent that the debtors' intent in using these words was two-fold: (a) the debtors were proposing that the postpetition mortgage payments would be made by the debtors directly to the mortgage lender as, essentially, a disbursing agent (not by the Chapter 13 Trustee); and (b) the debtors' were proposing that the Chapter 13 Trustee ought not to receive a commission on these disbursements made by the debtors; the Fifth Circuit noted that "outside the plan" had greater significance under the pre-Code Bankruptcy Act, because secured creditors whose claims were dealt with by a plan were entitled to vote—therefore, stating that payments to a secured creditor were being made "outside the plan" might eliminate the secured creditor's right to vote on the plan; the Fifth Circuit held that it is permissible for Chapter 13 debtors to make plan payments directly to a mortgage lender, in connection with curing and maintaining a mortgage, ***but when they do, it is still considered payments "under the plan"***).

[20] *Kessler,* 2015 WL 4726794 at *3 (citing *In re Harris*, 107 B.R. 204, 208 (Bankr. D. Neb. 1989)); *see also In re Heinzle*, 511 B.R. 69, 78 (Bankr. W.D. Tex. 2014) (holding that a payment is under the plan when the debt is provided for in the plan).

[21] *Id.* at 78.

Here, to reiterate, the Debtors have failed to make almost three years' worth of required, direct, postpetition mortgage payments to Ocwen where Ocwen's debt was provided for and treated in the confirmed plan. Thus, under the reasoning articulated in *In re Kessler* and *In re Heinzle*, with which this court entirely concurs, the Debtors are not entitled to a discharge.

### B. The Debtors' End-of-Case Proposed Plan Modification—Proposing To Surrender Their Homestead To the Mortgage Lender, As Full Payment On Its Secured Claim, Since Section 1329(a) Permits Plan Modification at "Any Time After Confirmation Of the Plan But Before Completion of Payments Under Such Plan"—Is Not Permissible Here.

As noted earlier, the Debtors in this case realized that decisional authority such as *Kessler* and *Heinzle*—if followed by this court—would lead to a conclusion that the Debtors would not be entitled to a discharge. However, the literal wording of section 1329(a) of the Bankruptcy Code permits plan modification "at any time after confirmation of the plan **but before completion of payments under such plan**" (emphasis added). At first blush, it might seem undeniably too late to modify a plan here, since the 60-month term of the plan has now elapsed. Section 1329(c) of the Bankruptcy Code states that a "plan modified under this section may not provide for payments over a period that expires after the applicable commitment period . . . unless the court, for cause, approves a longer period, **but the court may not approve a period that expires after five years after such time.**"[22] The Debtors nevertheless argue that the Proposed Plan Modification might still be pursued here, since there has not been "completion of payments" under their plan (as *In re Kessler, In re Heinzle*, and now this court have so held). Moreover, since the Debtors are moving to modify their plan to simply surrender the Homestead to Ocwen, the Proposed Plan Modification would not involve "payments" over a period of time that expires after five years after the time that the first payment under the original confirmed plan

---

[22] 11 U.S.C. § 1329(c).

was due.  The court believes the Debtors are technically, partially correct, that there might be a way to "fix" a problem such as the one in the case at bar—so long as the "fix" does not involve extending *plan payments*, *per se*, over a period of more than five years.  But the Proposed Plan Modification begs the fundamental question as to whether a debtor may modify her plan, post-confirmation *to surrender*.  There is no controlling authority on this question in the Fifth Circuit.

       1.   <u>Modification of a Confirmed Chapter 13 Plan, Generally.</u>

The court begins by noting that, pursuant to section 1327(a) of the Bankruptcy Code, a confirmed chapter 13 plan is binding on the debtor and each creditor, "whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, accepted, or has rejected the plan."[23]  But section 1329 of the Bankruptcy Code, of course, creates a statutory exception to section 1327(a), by allowing a debtor, trustee, or even an unsecured creditor to modify a chapter 13 plan post-confirmation.  Subsection (a) of section 1329 of the Bankruptcy Code provides that a plan may be modified *at any time before the completion of payments* to: "(1) increase or reduce *the amount of payments* on claims of a particular class provided for by the plan, (2) extend or reduce *the time for such payments*, (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan *to the extent necessary* to take account of any payment of such claim *other than under the plan*, or (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent)," subject to certain conditions (emphasis added).[24]  The ability to modify a confirmed plan in the chapter 13 world is

---

[23] 11 U.S.C. § 1327(a).

[24] 11 U.S.C. § 1329(a)(1)-(4).

remarkably different than in the chapter 11 world,[25] and is generally "based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly."[26] It is worth noting that there is not even a threshold requirement in the Fifth Circuit for there to be an unanticipated, ***substantial*** change to justify a post-confirmation Chapter 13 plan modification.[27] By way of example, a debtor may wish to modify his plan if he simply falls behind on his postpetition mortgage payments to provide for a cure of those postpetition arrearages.[28] With regard to surrender of collateral, certainly, any debtor has the option of surrendering collateral to a secured lender on account of its secured claim ***at the time of confirming her original plan***, pursuant to section 1325(a)(5)(C) of the Bankruptcy Code—one of the specified means of treatment of a secured creditor's claim in a plan is by "surrender[ing] the property securing such claim to such holder."[29] However, the word "surrender" is conspicuously ***absent*** from any of the subsections of section 1329(a) of the Bankruptcy Code dealing with modification. Still, as mentioned earlier, there is a significant split of authority on whether a debtor may nevertheless modify a chapter 13 plan, post-confirmation and before completion of payments under the plan, to surrender collateral to a

---

[25] *See* 11 U.S.C. § 1127(b) (a chapter 11 plan may be modified post-confirmation by the plan proponent or reorganized debtor but only before "substantial consummation" of such plan—as defined in section 1101(2) of the Code).

[26] *Meza v. Truman (In re Meza)*, 467 F.3d 874, 877 (5th Cir. 2006).

[27] *Id.* (there is actually conflicting authority among the circuits on this point, but the Fifth Circuit held in *Meza* that there is no requirement, in connection with a post-confirmation Chapter 13 plan modification, for there to be an unanticipated, substantial change that has occurred; thus, preliminarily, it made no difference to the court whether in *Meza* the debtor's postpetition income tax refund, which the trustee wanted to use to pay unsecured creditors in a proposed plan modification, constituted a substantial or unanticipated change).

[28] *Mendoza v. Temple-Inland Mortg. Corp. (In re Mendoza)*, 111 F.3d 1264, 1268 (5th Cir. 1997).

[29] 11 U.S.C. § 1325(A)(5)(C).

secured creditor. As further noted below, most of this authority is in the context of vehicles, not real property.

    2.  <u>The Split of Authority On the Ability to Modify a Chapter 13 Plan Post-Confirmation To Surrender Collateral.</u>

There is one line of cases holding that the literal wording of section 1329(a) of the Bankruptcy Code does not permit modification to surrender—the word simply is not used in the statute. The leading case rejecting the concept of modification-to-surrender is *Chrysler Financial Corporation v. Nolan (In re Nolan)*.[30] In *Nolan*, a chapter 13 debtor obtained confirmation of a plan that contemplated retaining a vehicle and bifurcating the amount owed thereon into an $8,200 secured claim (payable at 10% interest, from her monthly plan payments going to the trustee) and a $4,091.45 unsecured deficiency claim (which would get pennies on the dollar as part of the general unsecured creditors pool). Approximately one year after performing under the plan, the debtor moved to modify her plan to surrender her car to the lender and reclassify the entire debt as an unsecured deficiency claim. The debtor expressed an intention to buy another car since her current vehicle no longer provided reliable transportation. The car lender objected, arguing that this was not permissible pursuant to section 1329(a) of the Bankruptcy Code and also urging that the debtor had not acted in good faith because she failed to properly maintain her car. While the bankruptcy court allowed the modification, the district court reversed and the Sixth Circuit affirmed the district court. The court held that "a debtor cannot modify a plan under section 1329(a) by: (1) surrendering the collateral to a creditor; (2) having the creditor sell the collateral and apply the proceeds toward the claim; and (3) having any deficiency classified as an unsecured claim."[31] The court stressed that section 1329(a) of the

---

[30] *Chrysler Financial Corporation v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir. 2000).

[31] *Id.* at 535.

Bankruptcy Code only permits modification of the **amount** or **timing** of **payment**. While the court did focus extensively on the literal wording of the statute, it seems somewhat noteworthy that the court also focused on the inherent unfairness of a debtor promising payments based on the value of a vehicle at the outset of the case, the vehicle depreciating after use, and then passing the car off to the lender after the decline in value. But to be clear, the Sixth Circuit concluded that debtors can never modify a plan under section 1329(a) of the Bankruptcy Code by surrendering collateral and having a deficiency treated as an unsecured claim.[32] Relying on the reasoning articulated in *Nolan*, many bankruptcy courts, including several within the Fifth Circuit, have denied motions to modify chapter 13 plans to surrender collateral and reclassify any deficiency as an unsecured claim under section 1329(a).[33] Almost all of these cases: (a) involve vehicles, and (b) contain *dicta* noting the inequity of shifting back to a lender collateral that has depreciated during the plan.

As indicated, there are many courts that have departed from the ruling in *Nolan* and have held that there is no *per se* bar against post-confirmation modification to surrender collateral when the modified plan treats any deficiency as an unsecured claim.[34] In rejecting *Nolan's*

---

[32] *Id.* at 530-35 .

[33] *See, e.g., Sharpe v. Ford Motor Credit Co. (In re Sharpe)*, 122 B.R. 708, 709 (E.D. Tenn. 1991); *In re Conley*, 504 B.R. 661, 663 (Bankr. D. Colo. 2014); *In re Belcher*, 369 B.R. 465, 469 (Bankr. E.D. Ark. 2007); *In re Adkins*, 281 B.R. 905, 909-10 (Bankr. E.D. Mich. 2002), *aff'd*, 425 F.3d 296 (6th Cir. 2005); *In re Cameron*, 274 B.R. 457, 461 (Bankr. N.D. Tex. 2002); *In re Coffman*, 271 B.R. 492, 496-499 (Bankr. N.D. Tex. 2002); *In re Barclay*, 276 B.R. 276, 282 (Bankr. N.D. Ala. 2001); *In re Smith*, 259 B.R. 323, 326 (Bankr. S.D. Ill. 2001); *In re Jackson*, 280 B.R. 703, 705 (Bankr. S.D. Ala. 2001); *In re Goos*, 253 B.R. 416, 420 (Bankr. W.D. Mich. 2000); *In re Meeks*, 237 B.R. 856, 861-62 (Bankr. M.D. Fla. 1999); *In re Coleman*, 231 B.R. 397, 401 (Bankr. S.D. Ga. 1999); *In re Dunlap*, 215 B.R. 867, 870 (Bankr. E.D. Ark. 1997); *In re Holt*, 136 B.R. 260, 260-61 (Bankr. D. Idaho 1992).

[34] *See, e.g., Bank One, NA v. Leuellen (In re Leuellen)*, 322 B.R. 648, 662 (S.D. Ind. 2005); *In re Jones*, 538 B.R. 844, 852 (Bankr. W.D. Okla. 2015); *In re Tucker*, 500 B.R. 457, 461-62 (Bankr. N.D. Miss. 2013); *In re Odlin*, No. 07–62298, 2010 WL 3791486, at *3 (Bankr. D. Or. Sept. 22, 2010); *In re Davis*, 404 B.R. 183, 195-96 (Bankr. S.D. Tex. 2009); *In re Sellers*, 409 B.R. 820, 826-830 (Bankr. W.D. La. 2009); *In re Boykin*, 428 B.R. 662, 666-667 (Bankr. D.S.C. 2009); *In re Disney*, 386 B.R. 292, 301-305 (Bankr. D. Colo. 2008); *In re Lane*, 374 B.R. 830, 838-840 (Bankr. D. Kan. 2007); *In re Taylor*, 297 B.R. 487, 490-91 (Bankr. E.D. Tex. 2003); *In re Hernandez*,

categorical bar against modifications to surrender, these courts have expansively interpreted sections 1329(a) to permit surrender—even though the word "surrender" is never used in this statute. For example, some of these courts that permit modification-to-surrender have relied on section 1329(a)(1) of the Bankruptcy Code, and its language condoning plan modifications that "increase or reduce the amount of payments on claims of a particular class provided for the plan." The rationale is that each secured claim is generally treated as a separate class within a plan, and a modification to surrender collateral has the effect of ***reducing*** the ***amount of payments*** on claims of a particular secured class down to ***$0***.[35] Second, certain other courts that permit modification-to-surrender have relied upon section 1329(a)(3) of the Bankruptcy Code, and its language condoning plan modifications that "alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." The rationale is that a "surrender" is a "payment of such claim other than under the plan" and, accordingly, the modification alters the amount of the distribution to a creditor to account for that.[36] Never mind that there sometimes has not yet been a payment "other than under the plan" to take "account of," at the time of the proposed modification. Additionally, some courts sometimes seem to catapult over subsection (a) of section 1329 altogether, landing on ***subsection (b)(1)***—which states that "the requirements of section 1325(a) . . . apply to any modification under subsection (a) of this section." Section 1325(a) is, of course, a laundry list of requirements for ***confirmation*** of a chapter 13 plan and,

---

282 B.R. 200, 207 (Bankr. S.D. Tex. 2002); *In re Knappen*, 281 B.R. 714, 717-20 (Bankr. D.N.M. 2002); *In re Zieder*, 263 B.R. 114, 117-118 (Bankr. D. Az. 2001); *In re Townley*, 256 B.R. 697, 699 (Bankr. D.N.J. 2000).

[35] *See, e.g., Leuellin*, 322 B.R. at 658; *Tucker*, 500 B.R. at 462; *Sellers*, 409 B.R. 826-27; *Disney*, 386 B.R. at 303-04; *Lane*, 374 B.R. at 838; *Knappen*, 281 B.R. at 717; *Townley*, 256 B.R. at 699.

[36] *See, e.g., Tucker*, 500 B.R. at 462; *Sellers*, 409 B.R. at 827; *Davis*, 404 B.R. at 194; *Lane*, 374 B.R. at 838; *Taylor*, 297 B.R at 491; *Knappen*, 281 B.R. at 717-718; *Zieder*, 263 B.R. at 118.

among other things, addresses how a plan may provide various types of treatment for a secured claim—one of which treatments is surrender.[37]  Never mind that a modification still must comply with subsection (a) of section 1329 to ever reach the further provisions of subsection (b) of section 1329.  Finally, these courts sometimes conclude that section 502(j)'s grant of authority to *reconsider* claims has some relevance to the viability of a post-confirmation surrender. Specifically, some courts conclude that a bankruptcy court's power to reconsider a claim "for cause" enables a debtor to modify his or her confirmed plan under section 1329 of the Bankruptcy Code to surrender collateral.[38]  In other words, a debtor may use section 502(j) of the Bankruptcy Code to: (1) reduce the creditor's previously allowed secured claim to reflect the value of the collateral that was surrendered to it, and (2) re-classify the remainder of the creditor's previously allowed secured claim as an unsecured deficiency pursuant to section 506(a)."[39]  This ability is restricted, however, by section 502(j)'s requirement that a sufficient showing of "cause" be demonstrated and that a reconsidered claim "be allowed or disallowed according to the equities of the case."[40]  It should be noted that, in virtually all of the reported cases that determine that modification-to-surrender is permissible, there is still a discussion of "good faith."  Specifically, while many courts conclude that there is no categorical bar to modification-to-surrender, they nevertheless often disapprove a proposed modification

---

[37] *See, e.g., Leuellen*, 322 B.R. at 654; *Hernandez*, 282 B.R. at 206-207.

[38] *See, e.g., Tucker*, 500 B.R. at 462; *Davis*, 404 B.R. at 195; *Sellers*, 409 B.R. at 829; *Boykin*, 428 B.R. at 667; *Disney*, 386 B.R. at 302-303; *Lane*, 374 B.R. at 838; *Knappen*, 281 B.R. at 718; *Zieder,* 263 B.R. at 117-118.

[39] *Sellers*, 409 B.R. at 825-26 (citing *Zieder*, 263 B.R. at 117).

[40] *See, e.g., Tucker*, 500 B.R. at 462; *Davis,* 404 B.R. at 195; *Sellers*, 409 B.R. at 829-30; *Disney*, 386 B.R. 301-02.

ultimately, as not being proposed in good faith, in violation of section 1325(a)(3) of the Bankruptcy Code.[41]

As indicated earlier, this court determines it should join the line of cases that hold that a debtor may ***not*** modify a plan—post-confirmation but before completion of payments under such plan—pursuant to section 1329(a) of the Bankruptcy Code, in order to ***surrender*** collateral to a secured lender. One cannot ignore the fact that the word "surrender" does not appear in section 1329(a) of the Bankruptcy Code. As is often stated, we are to presume that Congress means to use the words that it uses. Congress knew when to use the word surrender when it wanted to. Congress used the word "surrender" in the set of options for treatment of secured claims in connection with ***confirmation*** under section 1325(a)(5) of the Bankruptcy Code. "Confirmation" is one thing. It refers to confirmation of the original plan. "Modification"— which is sometimes proposed years subsequent to confirmation—is quite another. It refers to the specific types of changes listed in section 1329(a) of the Bankruptcy Code. It is mental gymnastics to suggest that a "surrender" is tantamount to "increase[ing] or reduc[ing] the amount of payments" on a secured claim provided for in the original plan or is simply "alter[ing] the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." If a debtor is taking ***unilateral*** action to propose a surrender, there has not, at the time of the proposed modification, been any payment of such claim other than under the plan.

Here, the Debtors are over 60 months into their Chapter 13 Bankruptcy Case. The Homestead has not been foreclosed on by Ocwen. Section 1329(a) of the Bankruptcy Code sets forth four very specific ways that a debtor can modify her plan after confirmation, none of which

---

[41] *See, e.g., Jones*, 538 B.R. at 853; *Tucker*, 500 B.R. at 463-64; *Odlin*, 2010 WL 3791486, at *3.

reference "surrender."  Thus, following the Sixth Circuit in *Nolan* and various other courts, the court concludes that the Proposed Plan Modification, in which the Debtors attempt to force a change upon Ocwen's plan treatment, to surrender the Homestead in full satisfaction of Ocwen's secured claim, is not permitted under the literal wording of section 1329(a) of the Bankruptcy Code.  But even if this court errs on this point, here—where the collateral is a principal residence, as opposed to a vehicle—sections 1322(b)(2) and (b)(5) of the Bankruptcy Code additionally make modification to surrender unavailable to the Debtors.  Why?  Because a plan (as originally confirmed or as modified) cannot operate to modify the underlying rights of a holder of a secured claim with a security interest in the debtor's principal residence.[42]  This means Ocwen's "rights," which include the right to assert an unsecured deficiency claim, may not be modified.  Here, if the Debtors were allowed to surrender their Homestead at this late stage of the case (*i.e.,* at the end of the 60 month plan period), there would be no way for Ocwen to assert an unsecured deficiency claim and receive payment thereon under the plan.  The unsecured creditors in this case received a dividend.  Moreover, the only evidence before the court is that Ocwen is undersecured.

### C.   If Ocwen Had Taken Affirmative Action and Moved To Lift the Stay, Foreclosed, and There Was Time to Address Its Unsecured Deficiency Claim in the Chapter 13 Plan, Things Would Be Different.

As mentioned earlier, the holding in this case is very fact-specific.  A few different facts could entirely change this result.  Specifically, the court acknowledges that many cases come before it in which a debtor has missed postpetition mortgage payments and is confronted with a motion to lift stay from his or her mortgage lender at some point midway through her chapter 13 plan.  The stay is often lifted.  The mortgage lender forecloses.  The mortgage lender may or may

---

[42] 11 U.S.C. § 1322(b)(2); *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329-332 (1993).

not file an unsecured deficiency proof of claim.  In such a situation, a debtor sometimes files a

plan modification to address the new set of circumstances.  Often, the plan modification is

described loosely as a "modification-to-surrender."  Regardless of verbiage, such a modification

is not a "modification-to-surrender."  This situation does not reflect the debtor having a "change

of heart" (such as the situation in which a debtor grows weary of her clunker-vehicle midway

through her plan and tries to foist it now upon her lender).  Such a situation is not about a debtor

trying to unilaterally force something on her lender.  Such a situation involves a debtor

responding to the creditor's election of remedies.  Such a situation seems to fit comfortably

under section 1329(a)(3) of the Bankruptcy Code—in that the debtor would be proposing to

"alter the amount of the distribution to a creditor [the mortgage lender] whose claim is provided

for by the plan to the extent necessary to take account of any payment of such claim other than

under the plan."  The debtor in such a situation would be proposing to modify the mortgage

lender's plan treatment—presumably proposing to alter the amount of distribution to it:  (a) from

a series of payments that would cure prepetition arrearages and maintain postpetition obligations;

(b) to a *pro rata* dividend from the unsecured creditor pool on the mortgage lender's unsecured

deficiency.  This alteration would be "necessary to take account of the payment [foreclosure/sale

proceeds] of such claim other than under the plan."  This scenario does not seem like mental

gymnastics.  This scenario seems to fit squarely within what section 1329(a)(3) of the

Bankruptcy Code contemplated—changing the plan to account for payments to a creditor outside

of the plan.  ***A "surrender" is proactive on the part of the debtor—forcing a change upon a

creditor which is not authorized by section 1329(a) of the Bankruptcy Code.***  A modification to

alter the secured creditor's treatment ***after the secured creditor pursued remedies outside of the

plan and foreclosed*** is a debtor merely reacting to the "extent necessary" as section 1329(a)(3)

24

of the Bankruptcy Code contemplates.  In fact, this was the exact fact pattern that occurred in *In re Knappen*,[43] which was one of the cases cited above as departing from the holding in *Nolan*. Even though the bankruptcy court in *In re Knappen* described it as a "modification-to-surrender," the court believes that the facts demonstrated that it was really more in the nature of a modification to take into account a payment received "other than under the plan" and, thus, section 1329(a)(3) of the Bankruptcy Code would apply.[44]

However, again, it is noteworthy that sections 1322(b)(2) and (5) of the Bankruptcy Code must be considered with a primary residence (unlike with a vehicle that was the subject property in *In re Knappen*).  Sections 1322(b)(2) and (5) of the Bankruptcy Code prohibit modifying the rights of holders of secured claims on a debtor's principal residence.  Thus, any plan modification pertaining to such a creditor must not violate the underlying rights under the loan. With a residence—assuming the underlying mortgage loan is not a Texas home equity loan or other loan that is nonrecourse against a debtor (this is not the case here)—the lender must not, in any plan modification, be prevented from asserting an unsecured deficiency claim against the debtor after stay relief and foreclosure, or else its rights have been modified.[45]  Thus, in a case in which there has been stay relief during the case in favor of a lender and a possible plan modification that accounts for this distribution or payment to the lender during the case "other than under the plan," there would still need to be the ability for the mortgage lender to file an unsecured deficiency claim in the case (or even a section 502(j) motion), so that it can receive whatever distribution it is entitled to as an unsecured creditor.  In the context such as the case at

---

[43] *In re Knappen*, 281 B.R. 714, 717-20 (Bankr. D.N.M. 2002).

[44] *See also In re Taylor*, 297 B.R. 487, 491 (Bankr. E.D. Tex. 2003) (court allowed modification to surrender under section 1329(a)(3) for limited purpose of taking into account a payment received from another source where debtor had voluntarily surrendered vehicle and secured lender had sold the collateral).

[45] *See, e.g., In re Jefferson*, 299 B.R. 468, 470 (Bankr. S.D. Ohio 2003).

bar, there is no mechanism to provide for payment on a possible unsecured deficiency of Ocwen—since the Debtors are at the end of their 60-month plan (meaning a plan modification would inappropriately modify Ocwen's rights).  As noted, the general unsecured creditors in this case did receive a small dividend under the Debtors' plan and Ocwen would be entitled to a small payment on any unsecured deficiency claim it may have.

In summary, the court must deny the Proposed Plan Modification, and as a result, deny the Debtors their discharge.  This will be without prejudice to the Debtors' right to convert and pursue a discharge in chapter 7 (if eligible)—rather than face dismissal without a discharge.  While this result is unfortunate and somewhat awkward (considering that it may have been avoided had Ocwen been more proactive in the Debtors' Bankruptcy Case—something over which the Debtor had no control), the reality is that the Debtors simply waited too long to address the issue with the court.  Thus, there is no mechanism, at this point, for the Debtors to receive their chapter 13 discharge.[46]  Accordingly, it is

**ORDERED** that the Proposed Plan Modification is hereby denied; it is further

**ORDERED** that the Chapter 13 Trustee's objection to Debtors' request for discharge is sustained; and it is further

**ORDERED** that this is without prejudice to the Debtors' right to convert and pursue a discharge in Chapter 7 (if eligible) within ten days of entry of this order,[47] otherwise the court will dismiss the Bankruptcy Case without prejudice.

### ### END OF MEMORANDUM OPINION AND ORDER ###

---

[46] As this court has stated many times, this holding is very fact specific.  In some cases, a debtor might be able to negotiate an agreed order with a mortgage lender in which the mortgage lender will agree to accept the collateral and will agree it has been "paid in full."  This may be particularly achievable if the home loan is nonrecourse or if there was no dividend to general unsecured creditors under the plan.

[47] This Order is also without prejudice to a motion to extend this ten-day deadline, by up to 30 days, if the Debtors believe they can negotiate the type of Agreed Order with Ocwen that is described in the above footnote.